Charles **FRISELLA**

v.

**TRANSOCEANIC CABLE SHIP COMPANY, et al**

No. CIV.A.01–1855.

United States District Court, E.D. Louisiana.

Jan. 11, 2002.

646

Terrence Joseph Hand, Ronald E. Lampard, Hand & Lampard, Metairie, LA, for Plaintiff.

William E. O'Neil, Alanson Trigg Chenault, The O'Neil Group, LLC, New Orleans, LA, for Defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is defendant TCSC's Motion to Dismiss for Lack of Personal Jurisdiction. For the reasons that follow, the motion is GRANTED.

### Background

Transoceanic Cable Ship Company is a New York corporation with its principal place of business in Maryland; it operates and manages a fleet of ships that lay underwater cable. Between 1997 and 2001, TCSC hired crew members through the Manpower Coordinator of the Seafarer's International Union under the terms of a "Cable Ship Agreement" between it and the SIU. This agreement established the SIU as TCSC's source of unlicensed crew members and established for TCSC a manpower pool. The SIU negotiates on behalf of its dues-paying members for collective bargaining agreements with prospective employers as well as other employment issues. TCSC did not pay the SIU to recruit seamen.

Charles Frisella is a Louisiana resident and member of the SIU. In October 2000 TCSC hired Frisella and other seamen through the SIU and the New Orleans Seafarer's Hall, to work aboard the C/S Global Sentinel. TCSC arranged and paid for Frisella's and other crew members' transportation from New Orleans to a foreign port.

Frisella hurt his back while aboard the Global Sentinel off the coast of Chile. TCSC's onboard nurse treated Frisella and the company arranged and paid for his transportation home to New Orleans. TCSC's nurse gave Frisella a medical referral requesting further medical examination and treatment. Finally, TCSC made three maintenance payments totalling $264 to Frisella while he was in Louisiana.[1]

Frisella filed this suit seeking damages for his injury and for maintenance and cure. Frisella's petition alleges that the actions of fellow crew members, apparently as the result of a practical joke, caused his injury. Frisella's complaint alleges that TCSC did business in Louisiana and failed to provide an adequate crew. TCSC filed this motion to dismiss, contending that it does not have sufficient minimum contacts with Louisiana to support this

---

1. TCSC also made two payments to Frisella for unearned wages, totalling $2408.32.

Court's assertion of personal jurisdiction over it. This Court agrees.

### Law and Application

■ Personal jurisdiction over a non-resident defendant is proper if (1) the defendant is amenable to service of process under the forum state's long-arm statute and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *See Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir.1992). Because the Louisiana long-arm statute extends to the limits of constitutional due process, this Court need only consider whether personal jurisdiction over TCSC satisfies the Due Process Clause. *See Simmons v. SeaTide International Inc.*, 693 F.Supp. 510, 513 (E.D.La. 1988); *see also Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir.1990). Constitutional due process is satisfied where the defendant has "minimum contacts" with the forum state and requiring the defendant to litigate in the state does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The nature and quality of these contacts must indicate that the defendant should have reasonably anticipated being sued in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *see also Petty–Ray*, 954 F.2d at 1068.

■ Personal jurisdiction may be either specific or general. Specific jurisdiction exists if the defendant has purposely directed its activities toward the resident of the forum and the cause of action relates to such activities. *Burger King v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct.

2174, 85 L.Ed.2d 528 (1985); *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir.1992). This inquiry focuses on whether the defendant "purposefully availed itself of the privilege of conducting activities in-state, thereby invoking the benefits and protections of the forum state's laws," and jurisdiction may be proper even if the defendant has never set foot in the forum state. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir.1990). General jurisdiction exists where the defendant has continuous and systematic contacts with the forum state, even though those contacts do not relate to the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Frisella must make a prima facie showing of jurisdiction. *Petty–Ray*, 954 F.2d at 1067. Frisella's uncontroverted allegations must be taken as true, and all conflicts in the facts must be resolved in his favor. *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 785 (5th Cir.1990).

■ If a defendant has sufficient contacts with the forum state, a court must then determine whether the assertion of jurisdiction comports with fair play and substantial justice. This requires the consideration of (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Once it is determined that a defendant has minimum contacts with the forum, he must present "a compelling case that the presence of some consideration would render jurisdiction unreasonable. *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174.

## A. General Jurisdiction

This Court has decided several cases on similar facts and found no general personal jurisdiction. In *Ricord v. Energy Transporation Co.*, 1993 WL 459937, 1993 U.S. Dist. Lexis 15639 (E.D.La.1993)(Schwartz, J.), this Court dismissed the plaintiff's suit where the defendant, ETC, hired seamen through the SIU's manpower pool and had no direct contacts with the forum state. Like TCSC in this case, ETC through its travel agent provided transportation for its employees from the United States to foreign ports. Further, ETC had engaged the plaintiff for employment in New Orleans fifteen times, had retained a New Orleans physician for examining seamen for claims, and made payments to Louisiana seamen in Louisiana for maintenance and cure and wages. ETC was also aware that SIU hired through the New Orleans hall. Nevertheless, the Court held that ETC's only significant contact with Louisiana was the fortuitous hiring of the plaintiff through the union. *Id.* 1993 WL 459937 at *3, 1993 U.S. Dist. Lexis at *7.

Similarly, in *Carter v. Ocean Ships, Inc.*, 1990 WL 128207, 1990 U.S. Dist. Lexis 11440 (E.D.La.1990)(Carr, J.), this Court found personal jurisdiction lacking where the employer had hired numerous employees from Louisiana. And in *Jones v. Maritime Overseas Corp.*, 1992 WL 38101, 1992 U.S. Dist. Lexis 1887 (E.D.La. 1992)(Sear, J.), this Court dismissed a seaman's complaint where the defendant had no contacts with Louisiana except that it notified the SIU of a job vacancy and provided the plaintiff's transportation from New Orleans to an offshore port. It is clear that, like the defendants in *Ricord, Carter,* and *Jones,* TCSC does not have the type of continuous and systematic contacts with Louisiana necessary to support general jurisdiction.

## B. Specific Jurisdiction

Frisella makes a more credible, but unpersuasive, argument for specific jurisdiction. He contends that unlike in *Ricord, Carter,* and *Jones,* his claims are related to TCSC's activity in Louisiana because (1) the SIU acted as TCSC's agent, and so its activities should be imputed to TCSC, and (2) the SIU hired an "inadequate" crew inasmuch as the crew members' intentional actions caused his injuries. It is true that the wrongful death action in *Ricord* was unrelated to ETC's faint contacts with Louisiana or its hiring of the plaintiff. There was also no direct connection between the grievances in *Carter* and *Jones* and the defendants' hiring activities. Furthermore, a Texas federal court held in *Guyton v. Pronav Ship Management, Inc.*, 139 F.Supp .2d 815 (S.D.Tex.2001) that a vessel operator was subject to specific personal jurisdiction in Texas where the SIU was its agent for hiring crew members. The *Guyton* analysis focused on the employer's control over the means and details whereby the SIU recruited and selected crew members, noting that the contacts of an agent, but not those of an independent contractor, can be imputed to the principal for the purposes of the jurisdictional inquiry. *See Burger King,* 471 U.S. at 480 n. 22, 105 S.Ct. 2174; *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 492 (5th Cir.1974).

There is no evidence in this record that TCSC exercised significant control over SIU's activities in Louisiana. Instead, it is more accurate (and more factual) to say that the SIU acted as an agent for Frisella and the other union members who paid the SIU for its services. Also unlike Frisella, the plaintiff in *Guyton* had worked for the defendant numerous times as part of a crew pool for the specific vessel in question. Furthermore, the connection between Frisella's injury and SIU's hiring practices is tenuous at best.

Coats v. Penrod Drilling Corp. et al., 5 F.3d 877 (5th Cir.1993), *reh'g granted,* 20 F.3d 614 (1994), *relevant part reinstated,* 61 F.3d 1113 (1995), in which the appeals court found personal jurisdiction, is instructive as to the quality of contacts sufficient to satisfy specific jurisdiction. In *Coats,* as here, the defendant MIS provided transportation for the injured seaman Coats to the forum state-Mississippi-for treatment. MIS through another company made maintenance and cure payments to the plaintiff in Mississippi, and Coats sued MIS in part for its termination of such payments. In *Coats,* however, representatives of the defendant MIS actually visited the forum state to recruit seamen and to hire Coats. MIS also advertised in a Louisiana newspaper, and the court, correctly, noted that this was precisely the type of "reaching out" to the forum that should have led MIS to anticipated being sued there. *See Coats,* 5 F.3d at 884. Moreover, the employer in *Coats* helped decide where the plaintiff would get treatment. *Id.* There is no evidence here that TCSC participated in Frisella's decision to go to Louisiana for treatment. TCSC's nurse merely released Frisella with instructions to see a doctor. It is also important to point out that TCSC's maintenance payments to Frisella amounted to only $264. It would be an abusive distortion of this Court's jurisdiction to find that TCSC should have anticipated being sued in Louisiana based on its minuscule Louisiana involvement. TCSC did not purposely direct its activities, or reach out, to Louisiana in the same way that the defendant did in *Coats.*

Accordingly, the motion to dismiss is GRANTED.